## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

RICHARD JOYNER,           )
                            )
       Plaintiff,         )
                            )
                            )
       v.             )     Civil Action No. 00-2006 (RBW)
                            )
                            )
JANET RENO, <u>et al.</u>,         )
                            )
       Defendants.     )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff commenced this action alleging several violations of 42 U.S.C. § 1983

(2000), negligence, and intentional infliction of emotional distress against various federal and

District of Columbia agencies and their officers.  Amended Complaint ("Amend. Compl.") ¶¶ 19,

25-28.  Currently before the Court is the Federal Defendants' Motion to Dismiss ("Def.'s

Mot.").[1]  For the reasons set forth during the September 29, 2006, status conference, and as

further discussed below, the Court will again transfer this case to the Middle District of

Pennsylvania.[2]

_____

[1] The following papers have been submitted to the Court in connection with this motion: (1) Federal Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem."), (2) Plaintiff's Memorandum of Points and Authorities in Opposition to Federal Defendant's Motion to Dismiss ("Pl.'s Opp'n"), and (3) Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Def.'s Reply").

[2] During oral argument, the Court indicated to the parties that it might dismiss two of the defendants, Reno and Ashcroft, before transferring the case to the Middle District of Pennsylvania because a <u>Bivens</u> action cannot lie against them based upon the facts of this case.  Upon further reflection, this Court must conclude that dismissal by this Court of these defendants would unduly prejudice the plaintiff and then result in the unnecessary consumption of judicial resources in two circuits.  This would occur because were this Court to dismiss defendants Reno and

(continued...)

I. Background

      This Court has previously set forth an extensive discussion of the facts of this case in its earlier memorandum opinion.  Joyner v. District of Columbia ("Joyner I"), 267 F. Supp. 2d 15, 16-17 (D.D.C. 2003).  It is helpful, nonetheless, to briefly review the facts again here along with the procedural history of the case.

      Frank Joyner was an inmate in the United States Prison in Lewisburg, Pennsylvania ("USP Lewisburg"), beginning in May 1986.  Id. at 17.  In August 1997, he was allegedly murdered by other inmates.  Id.  The plaintiff, Richard Joyner, as personal representative of the estate of decedent Frank Joyner, brought this action against the various defendants alleging failure to properly care for and protect the decedent while he was an inmate at USP Lewisburg. Amend. Compl. ¶ 20.

      This case was originally filed in this Court on August 16, 2000.  Docket Entry ("Dkt.") 1. The plaintiff originally asserted claims only against the District of Columbia and USP Lewisburg.  Pl.'s Mem. at 2.  In November 2001, both defendants moved for dismissal.  Joyner I, 267 F. Supp. 2d at 15.  The motion of USP Lewisburg also contained an alternative motion to transfer the case to the Middle District of Pennsylvania.  Pl.'s Mem. at 2-3.  The plaintiff was then granted leave to file an amended complaint, dkt. 36, and he subsequently filed claims against several additional defendants, including various District of Columbia officials; former

---

<sup>2</sup>(...continued)

Ashcroft, an appeal of that determination could only be taken to the United States Court of Appeals for the District of Columbia Circuit.  And, because the case is being transferred, any appeal of rulings rendered by the Middle District of Pennsylvania would have to be heard by the United States Court of Appeals for the Third Circuit.  Thus, to prevent the parties from having to litigate this case in two different circuits, the Court has determined that in the interest of justice and judicial economy, the most prudent course is to transfer the entire case, without dismissing the claims against defendants Reno and Ashcroft.

Attorneys General Janet Reno and John Ashcroft; Scott Dodrill, the warden at USP Lewisburg; and several unnamed defendants who were employees at USP Lewisburg.  Amend. Compl. at 2. These additional defendants were named as defendants in both their official and individual capacities.  Id.

On June 2, 2003, this Court dismissed the District of Columbia and the named District of Columbia officials as defendants because the District of Columbia retained no discretion over where its prisoners convicted of felonies are placed and owe no duty of care to prisoners placed in facilities that it does not operate.  Joyner I, 267 F. Supp. 2d at 18.  With the District of Columbia and its officials no longer parties to this action, the Court determined that this matter should be transferred to the Middle District of Pennsylvania.  Id. at 16.  This Court reasoned that transfer to that district was proper under 28 U.S.C. § 1404(a) (2000),[3] because most, it not all of the witnesses are located there and the operative events occurred in Lewisburg, Pennsylvania, which is located in that district.  Joyner I, 267 F. Supp. 2d at 20-21.  This Court concluded that transfer to that district was further warranted because it was likely that the unnamed guards were Pennsylvania residents, and the institutional records would be found in the Middle District of Pennsylvania.  Id. at 21.  Additionally, the prison where the decedent was allegedly murdered is in that district, and the suit no longer had any connection to the District of Columbia because the claims against the local government and its officers had been dismissed.  Id.  Therefore, this Court concluded that in the interest of justice and for the convenience of the parties, transfer of this case to the Middle District of Pennsylvania was proper.  Id.

---

[3] That statute reads, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

For the next two years, this action remained in the Middle District of Pennsylvania.

Eventually, the District Judge presiding over this action in the Middle District of Pennsylvania

issued an order, <u>sua sponte</u>, to show cause why the case should not be transferred back to this

Court.  <u>Joyner v. Federal Bureau of Prisons</u> ("Joyner II"), No. 04CV489, 2005 WL 3088371, at

*5 (M.D. Pa. Nov. 17, 2005).  Unconvinced by the plaintiff's response that the case should

remain in the Middle District of Pennsylvania, the District Judge, on December 13, 2005,

transferred this action back to this Court.  Order Transferring Venue, Dec. 13, 2005.

In his transfer order, the Judge in the Middle District of Pennsylvania concluded that

before a judge may transfer a case under § 1404(a), the judge must first determine whether an

applicable statute of limitations would require dismissal of the action in the potential transferee

Court.  This assessment, the Judge opined, is required by the text of § 1404(a), which provides

that "a district court may transfer any civil action to any other district or division where it might

have been brought."  <u>Joyner II</u>, 2005 WL 3088371, at *3.  Although the Judge stated that it was

unclear which state's law (Pennsylvania or the District of Columbia) applies to this case because

it is a federal question case, <u>id.</u> at *4, he concluded that if Pennsylvania's two-year statute of

limitations applied, the case would have to be dismissed as untimely filed, and thus under §

1404(a) it could not have been brought in the Middle District of Pennsylvania.  <u>Id.</u>  Based on this

analysis, the Pennsylvania Judge transferred the case back to this Court.  <u>Id.</u>

## II. Discussion

The proceedings conducted in the Middle District of Pennsylvania, in addition to the

transfer of this action back to this Court, also resulted in a narrowing of the contested issues

because the plaintiff voluntarily dismissed his claims under the Federal Tort Claims Act while

the case was in that district.  Joyner II, 2005 WL 3088371, at *3 n.1.  Therefore, all that now

remains in this action are the plaintiff's Bivens claims against defendants Reno, Ashcroft,

Dodrill, and the several unnamed defendants. Fed. Def.'s Mot. at 3.  In the motion currently

pending before the Court, the federal defendants argue that dismissal of these remaining claims is

proper because: (1) the plaintiff cannot pursue a Bivens action against the defendants in their

official capacities due to sovereign immunity; (2) the individual defendants have not been

properly served with process; (3) this Court lacks personal jurisdiction over all of the remaining

defendants; (4) the doctrine of respondeat superior cannot serve as the basis for a Bivens claim;

(5) all of the defendants are entitled to qualified immunity; and (6) venue is not proper in this

Court.  For the reasons set forth below, this Court will abstain from reaching the merits of this

motion.  Rather, in the interest of justice, this Court will again transfer this action to the Middle

District of Pennsylvania.  To explain its reasoning for again transferring this case to the Middle

District of Pennsylvania, the Court will begin by analyzing the memorandum opinion and order

returning the case here.

A. The Middle District of Pennsylvania Decision

As indicated, this case was originally transferred by this Court to the Middle District of

Pennsylvania pursuant to 28 U.S.C. § 1404(a).  Joyner I, 267 F. Supp. 2d at 20-21.  That Court,

however, believing that the transfer was in error, sent the case back to this Court.  In deciding to

do so, the Pennsylvania Court first noted that "a threshold question to consider is whether the

action 'might have been brought' in the proposed transferee district, the Middle District of

Pennsylvania.  If this limitation is met, the court must then weigh a list of factors."  Id. (internal

citations omitted).  The Pennsylvania Court then suggested that "the learned District Judge [(this

Judge)], likely through inadvertence, disregarded the above-referenced dictates of § 1404(a) in transferring this case." <u>Joyner II,</u> 2005 WL 3088371, at *3.  In applying what it deemed to be the proper test, the Pennsylvania Court first concluded that in the absence of a federal statute of limitations, a state's statute of limitations controlled.  <u>Id.</u>  The Court then noted that while it was unclear which jurisdiction's statute of limitations controlled—the District of Columbia or Pennsylvania—under the applicable Pennsylvania statute of limitations, the case would have been untimely filed.   <u>Id.</u> (noting that Pennsylvania has a two-year statute of limitations).  Therefore, the Court found that because this action was filed after the expiration of the applicable Pennsylvania statute of limitations period, the case could not have originally been brought in Pennsylvania and this Court therefore erred in transferring the case to that Court.  <u>Id.</u>  The reasoning of the Pennsylvania Court is flawed and contrary to clear case authority in three key respects.

First, the Pennsylvania Judge has interpreted § 1404(a) in a manner inconsistent with the statute and existing case law.  Second, even if the Pennsylvania Court's interpretation were correct, which this Court concludes it is not, the Judge failed to faithfully apply his own interpretation.  And finally, the Pennsylvania Judge's order transferring this case back to this Court appears to rely solely on his belief that this Court's transfer order was in error and fails to identify another proper basis for the transfer.  The Court will discuss each flaw of the Pennsylvania Judge's decision in turn.

The Pennsylvania Judge first erred by construing the "might have been brought" language

of § 1404(a) contrary to established law.[4]  Specifically, this provision does not permit a Court to

consider a statute of limitations defense when determining whether the transfer is appropriate as

alleged by the Pennsylvania Judge.  The Supreme Court has recognized that "the words 'might

have been brought' must be construed with reference to the federal laws delimiting the districts

in which such an action 'may be brought' and not with reference to laws of the transferee State."

Van Dusen v. Barrack, 376 U.S. 612, 624 (1964).  As the Supreme Court made clear in Van

Dusen:

> We cannot agree that the final clause of §1404(a) was intended to restrict the
> availability of convenient federal forums by referring to state-law rules, such as
> those concerning capacity to sue, which would have applied if the action had
> originally been instituted in the transferee federal court.  Several considerations
> compel this conclusion.  First, if the concluding clause is considered as an
> independent entity and perused for its plain meaning, it seems clear that the most
> obvious referents of the words are found in their immediate statutory context.
> Section 1404(a) was enacted as part of Chapter 87 of Part IV of the Judicial Code
> of 1948.  That Chapter is designated "District Courts; Venue."  The chapter itself
> is in that Part of the Code dealing generally with "Jurisdiction and Venue."  In the
> immediate Chapter, which includes §§ 1391-1406, the phrase "may be brought"
> recurs at least 10 times and the phrase "may be prosecuted" at least 8 times.  The
> statutory context is thus persuasive evidence that the "might-have-been-brought"
> language of § 1404(a) plainly refers to the similar wording in the related federal
> statutes and not directly to the laws of the State of the transferee forum.

Id. at 621-22.  Although Van Dusen differs slightly from the case at bar, in that it involved a

diversity case and an issue of representative capacity to sue, id. at 614-15, nothing in the opinion

indicates that its holding should be limited to those specific circumstances.

Other federal courts have also applied this principle to exclude from consideration under

§ 1404(a) a state's statute of limitations in the analysis of whether an action "might have been

---

[4] The memorandum opinion and order of the Middle District of Pennsylvania provides no authority as
support for its interpretation of § 1404(a).

brought" in the potential transferee court.   Packer v. Kasier Found. Health Plan of the Mid-Atl.

States, Inc., 728 F. Supp. 8, 12 (D.D.C. 1989) (holding that "Courts are in agreement that a

district where plaintiff's action 'might have been brought' is one that has subject matter

jurisdiction, as well as one in which venue is proper and defendants are amenable to service of

process" and rejecting the position that the possibility of an expired statute of limitations was a

proper factor to consider); Schreiber v. Allis-Chalmers Corp., 448 F. Supp. 1079, 1084 (D. Kan.

1978) (stating that "the 'might have been brought' language of § 1404(a), in the present context,

refers chiefly to questions of venue and jurisdiction in the transferee court; it concerns a

plaintiff's right to institute the action originally, and not possible defense[s] which may be

interposed by a defendant, such as a statute of limitations."), rev'd on other grounds, 611 F.2d

790 (10th Cir. 1979); see also Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970)

(defining a forum where the action "might have been brought" for purposes of 28 U.S.C. §

1404(a) as one in which venue and personal jurisdiction are satisfied).  In fact, when a former

member of this Court was presented with a virtually identical question–whether a Virginia statute

of limitations was a bar to transfer to that state under § 1404(a) in a diversity case–the Court

noted that:

> [t]o bar transfer of a case to a district where venue and jurisdiction are proper,
> simply because the action is time-barred in that district, would merely encourage
> forum shopping.  A plaintiff could then wait until the statute of limitations has run
> in the jurisdiction where the case should have been brought, and then file the
> action in the district the plaintiff prefers, despite that jurisdiction's limited nexus
> to the case.  Section 1404(a) was "intended in part to avoid forum shopping by
> plaintiffs," and the Court will not permit this purpose to be thwarted by strategic
> filing.

Packer, 728 F. Supp. at 12 (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H.

Cooper, Federal Practice and Procedure: Jurisdiction § 3845 (2d ed. 1986)).  This Court agrees

with the reasoning in <u>Packer</u>.  Accordingly, it is the District Judge in Pennsylvania who has

misconstrued (or maybe inadvertently overlooked) the law governing interdistrict transfer, not

this Court.

The Pennsylvania Judge's second error was failing to faithfully apply his flawed

interpretation of § 1404(a).  In his analysis, the Pennsylvania Judge failed to determine which

state's statute of limitations applies in this case.  <u>Joyner II</u>, 2005 WL 3088371, at *4.  He simply

determined that transfer to his Court would be improper if the Pennsylvania statute applies and

identified a split in the case law as to which state's law should govern in federal question cases.

<u>Id.</u>  Even under the Pennsylvania Court's interpretation of § 1404(a), transfer back to this Court

would only be appropriate if the Court determined that the Pennsylvania statute of limitations

governs.  Thus, the failure to actually determine which jurisdiction's law controls prior to

determining that the Pennsylvania statute of limitations was a bar to this case being brought in

Pennsylvania omitted a necessary determination the Pennsylvania Judge's own interpretation of

§ 1404(a) requires.  Then, inexplicably, the Pennsylvania District Judge invoked his decision to

transfer the case back to this Court as the justification for not addressing the choice of law

question, stating, "[w]e need not reach this issue however, nor do we express any opinion as to

the merits of Defendants' Motion, because our intention under the circumstances of this case is to

transfer it back to the United States District Court for the District of Columbia."  <u>Id.</u>  It was

fundamentally illogical to employ the ultimate transfer conclusion as the basis for failing to

resolve a necessary intermediate component of the Judge's own test before reaching the final

conclusion.

Finally, the Pennsylvania District Judge failed to provide a proper basis for reviewing the merits of this Court's decision and transferring the case back to this Court. Joyner II, 2005 WL 3088371. The Pennsylvania Court did not rule that personal jurisdiction or venue was improper there, id., and a district court may not directly review the merits of the transfer decision of another district court, Starnes v. McGuire, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc) (holding "it is well established that a transferee court cannot directly review the transfer order") (citations omitted); see also 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3855 (2d ed. 1986). Only the District of Columbia Circuit has jurisdiction to review, through mandamus, the merits of the transfer decision of this Court, provided that this Court, as the transferor court, had never lost jurisdiction due to the transfer to the Pennsylvania Court having been impermissible under § 1404(a), i.e., the transfer was made to "a forum where the action could not have been brought[]," Starnes, 512 F.2d at 924 n.6. The Pennsylvania Judge could also have employed "informal procedures . . . to return [the] case to [this court] for review of the order." Id. at 924 (citations omitted).[5] What the Pennsylvania District Judge did, however, was transfer the case back to this Court, stating that "the learned District Judge [(this Judge)], likely through inadvertence, disregarded the . . . dictates of § 1404(a)[—that the case 'might have been brought' in the Middle District of Pennsylvania and 'the transfer will serve the convenience of the parties and the witnesses, and the interest of society'—]in transferring this case to the Middle District of Pennsylvania." Joyner II, 2005 WL 3088371, at *3. But this Court did consider these factors, Joyner I, 267 F. Supp. at 21 ("the

---

[5] This Judge would have graciously entertained an informal request to review its transfer order had his Pennsylvania colleague chosen to pursue this course.

Middle District of Pennsylvania is the forum where the prison of Frank Joyner's murder is located, where the records and other physical evidence will be found, and where it is likely that most of the potential witnesses are located . . ."), and this Court is at a loss as to why the Pennsylvania District Judge concluded otherwise from what this Court stated.  Obviously, the Pennsylvania Judge based his rejection of the transfer on his flawed reasoning that this case could not have been brought in his district because the applicable Pennsylvania statute of limitations would bar its prosecution there.  Joyner II, 2005 WL 3088371, at *3 ("The transfer of this case to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) effectively gave rise to a potentially complete statute of limitations defense, which is exactly what the dictates and plain language of § 1404(a) were designed to prevent.") (footnote omitted).  Thus, without providing a proper basis for challenging this Court's transfer order, the Pennsylvania District Judge has, in effect, attempted to exercise appellate review of the merits of this Court's § 1404(a) transfer decision.  It is amazing that the Pennsylvania District Judge felt he had the authority to review the decision of a co-equal Court and disregard the organizational structure of the federal court system.  This overreaching in the face of long-established precedent is troubling, to say the least.  And this is particularly so when long-standing authority from the Pennsylvania Judge's own circuit teaches that he acted without proper authority.  Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 169 (3d Cir. 1982) ("Adherence to law of the case principles is even more important in this context where the transferor judge and the transferee judge are not members of the same court.  Here, the principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an

issue already decided by a court of equal authority.") (citations and footnote omitted);[6] <u>Abels v. State Farm Fire and Cas. Co.</u>, 694 F. Supp. 140, 142 (W.D. Pa. 1988) ("it is beyond our authority to review the decision of the California district court to transfer the case here.") (citing <u>Hayman</u>, 660 F.2d at 162).

Moreover, the transfer back to this Court has created an insurmountable obstacle, which prevents this Court from adjudicating the merits of the plaintiff's remaining claims.  The Supreme Court has instructed that before reaching the merits of a case, a federal court must first address whether it has jurisdiction.  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998); <u>see also</u> <u>Nuclear Energy Inst. Inc., v. EPA</u>, 373 F.3d 1251, 1264 (D.C. Cir. 2004). Because personal jurisdiction in this district over most of the defendants is lacking,[7] the return of

---

[6] Ironically, <u>Hayman</u> also involved a transfer by a former judge of this Court to a District Judge in the Third Circuit.  <u>Hayman</u>, 669 F.2d at 169.  And just as in this case, the District Judge in the Third Circuit improperly attempted to retransfer the case back to this Court.  Accordingly, the Third Circuit, on mandamus, ordered the New Jersey District Court to "vacate its order transferring the case to the United States District Court for the District of Columbia."  <u>Id.</u>

[7] The Court agrees with the defendants that the applicable District of Columbia long-arm statute does not grant this Court a basis for exercising personal jurisdiction over defendant Dodrill or the unnamed defendants. Def.'s Mot. at 9.  "The normal rules for personal jurisdiction apply" to <u>Bivens</u> actions.  <u>James v. Reno</u>, No. 99-5081, 1999 WL 615084, at *1 (D.C. Cir. July 2, 1999).  With regard to tortious injury claims such as this one, the only applicable provision of the District of Columbia long-arm statute is D.C. Code § 13-423(a)(4), which requires that the injury must occur in the District of Columbia for personal jurisdiction to be proper in this Court.  <u>See</u> D.C. Code § 13-423 (2001); <u>Helmer v. Doletskaya</u>, 393 F.3d 201, 208 (D.C. Cir. 2004) (holding that § 13-423(a)(3) "is a 'precise and intentionally restricted tort section which stops short of the outer limits of due process,' and requires that both act and injury occur in the District of Columbia.") (citations omitted); <u>GTE New Media Servs. Inc. v. BellSouth Corp.</u>, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (reading the language of D.C. Code § 13-423(a)(4) to only vest personal jurisdiction in this Court if the injury took place in the District of Columbia).  Here, the alleged injury that caused the decedent's death occurred at USP Lewisburg, which is located in the Middle District of Pennsylvania, amend. compl. ¶¶ 14, 19, so the applicable District of Columbia long-arm statute for tortious injury, D.C. Code § 13-423, does not provide a basis for this Court to exercise personal jurisdiction over any of the Pennsylvania defendants and any other defendants not domiciled in the District of Columbia.  Admittedly, there is reason to believe that defendant Reno was domiciled in the District of Columbia at the time the complaint was filed, and D.C. Code § 13-422 (2001) would likely vest personal jurisdiction over her in this Court.  However, defendant Ashcroft's domicile at the time the complaint was filed is uncertain; thus, it is also unclear whether this Court could exercise personal jurisdiction over him under D.C. Code § 13-422.  Nonetheless, because the District of Columbia long-arm statute does not afford this Court authority to exercise personal jurisdiction over defendant Dodrill, the unnamed defendants, and likely over defendant Ashcroft, there is no need to assess whether, in the hypothetical

(continued...)

this case here by the Pennsylvania Court has placed the case back in the hands of a Court that has

no power to address the merits of the plaintiff's complaint as to those defendants.  Although this

Court may have personal jurisdiction over defendants Reno and Ashcroft, because venue is not

proper here for the reasons explained below, this Court also cannot reach the merits of the

plaintiff's claims as to these two defendants based on 28 U.S.C. § 1406(a) (2000).  This statute

reads, "[t]he district court of a district in which is filed a case laying venue in the wrong division

or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or

division in which it could have been brought."  § 1406(a).  This language makes clear that a court

has no discretion to reach the merits of a case in which venue is improper and an objection to

venue has been properly raised; the case must either be dismissed or transferred to a proper

venue.  See Smith v. U.S. Investigations Servs., No. 04-0711, 2004 WL 2663143 at *2 (D.D.C.

Nov. 18, 2004) (holding that "[i]f the district in which the action is brought does not meet the

requirements of section 1391(b), then that district court may either dismiss or . . . transfer such

case to any district or division in which it could have been brought.") (citing § 1406(a)) (internal

quotation marks omitted); cf. Glendora v. Anderson, 2003 WL 202108, at * 1 (9th Cir. 2003)

(concluding that "[t]he district court properly declined to reach the merits of the dispute because

the merits may only be decided by a court with jurisdiction and venue.").  Furthermore, even if

venue were proper in this district, it would still be in the interest of justice to transfer the case

back to the Pennsylvania Court in its entirety.  See supra note 2.

      Finally, even if this Court were to address the alternative bases for dismissal put forth by

---

[7](...continued)
situation where statutory personal jurisdiction is authorized, that exercise would be constitutional under the Due
Process Clause.  Margoles v. Johns, 483 F.2d 1212, 1220 (D.C. Cir. 1973).

the federal defendants—that <u>respondeat</u> <u>superior</u> liability cannot form the basis of a <u>Bivens</u>

claim, that the defendants are entitled to qualified immunity, and that service of process was

insufficient—on appeal there is no guarantee that the District of Columbia Circuit would review

these rulings because personal jurisdiction by this Court over most of the defendants is lacking.

<u>See</u> <u>United States v. Ferrara</u>, 54 F.3d 825, 827-28 (D.C. Cir. 1995) (refusing to reach further

issues raised by the parties on appeal because district court's dismissal for lack of personal

jurisdiction was proper).  Thus, while there may be valid reasons for dismissal, this Court would

do a disservice to the plaintiff by reviewing any of the defendants' challenges as to any of the

defendants.

B. Venue

As previously discussed, this Court, just like the Pennsylvania District Court, lacks

authority to transfer this action back to the Middle District of Pennsylvania by attempting to

assess the merits of the transfer decision.  Rather, only the Third Circuit can review the

Pennsylvania District Judge's ruling.  <u>Starnes</u>, 512 F.2d at 924.  However, a transferee Court is

not precluded from determining its own jurisdiction if the transfer order did not purport to make

that determination.  <u>Hoffman v. Blaski</u>, 363 U.S. 335, 342 n.9 (1960).  Therefore, a transferee

Court (assuming this Court is now in that status) "may remand [a] transferred case if it finds

personal jurisdiction lacking or venue improper, and the transferor court has not determined the

issue."  <u>Abels v. State Farm Fire & Casualty Co.</u>, 770 F.2d 26, 28 n.2 (3d Cir. 1985) (citing

<u>Hoffman</u>, 363 U.S. 335).  In this case, the Pennsylvania Court did not assess the venue question

(nor the jurisdiction question), <u>Joyner II</u>, 2005 WL 3088371, at *4-*5, and venue is now

improper here for the reasons that follow, so retransfer to the Pennsylvania Court is legally

14

permissible.

The threshold issue for the Court to address in determining the venue question, is which provision of 28 U.S.C. § 1391 (2000) governs in this case.  While § 1391(e) applies to suits against government officials acting in their official capacities,[8] Stafford v. Briggs, 444 U.S. 527, 542 (1980) (holding that § 1391(e) only applies to suits that are "in essence against the United States"), this suit is no longer an action of that nature.[9]  Rather, the proper venue provision for this and other cases in which federal officials are sued in their individual capacities based on federal question jurisdiction is 28 U.S.C. § 1391(b) (2000).  Meyer v. Reno, 911 F. Supp. 11, 14-15 (D.D.C. 1996); see also Cameron v. Thornburgh, 983 F.2d 253, 257 (D.C. Cir. 1993) (determining venue for the plaintiff's Bivens claim under 28 U.S.C. § 1391(b)).

For the reasons that follow, venue is improper in this Court under § 1391(b).[10]  Pursuant

---

[8] That section reads:

> A civil action in which a defendant is an officer or employee of the United States of any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

[9] Venue must be judged on the claims as they exist when the issue is raised rather than as they existed when the amended complaint was filed.  See Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1200-01 (8th Cir. 1990) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989)).  Here, the claims under the Federal Tort Claims Act have been voluntarily dismissed, and the Bivens actions against defendants Reno, Ashcroft, and Dodrill in their individual capacities are all that remain.  Fed. Def.'s Mot. at 3.

[10] The Court finds no merit to the plaintiff's arguments that venue is proper here.  The plaintiff first suggests that "this issue has been settled by the Pennsylvania Court and the Law of the Case Doctrine should prevail."  Pl.'s Opp'n at 6.  And thus, the plaintiff opines that the policy of judicial finality supports the application of the law of the case doctrine.  Id. (citing Arizona v. California, 460 U.S. 605, 618 (1983)).  The plaintiff further contends that this Court should give deference to his choice of forum.  Id. at 7 (quoting Beckley v. Auto Profit Masters, L.L.C., 266 F. Supp. 2d 1001, 1004 (S.D. Iowa 2003)).  However, the plaintiff concedes that the law of the case doctrine is a prudential one which does not limit the Court's jurisdiction or power, id. at 6, and deference to the plaintiff's choice of forum has no weight if venue is improper in this district.  See 28 U.S.C. § 1406(a) (mandating that a district court in a district or division in which venue is improper must either dismiss or transfer a case to a

(continued...)

to this provision, "a civil action in which jurisdiction is not founded solely on diversity of citizenship may be brought only in a judicial district . . . where any defendant resides, if all defendants reside in the same state." § 1391(b)(1). Or, a claim may be brought "where a substantial part of the events giving rise to the claim occurred." § 1391(b)(2). Here, subsection (b)(1) cannot provide the basis for this Court being a proper venue in this case because defendant Dodrill, the warden of USP Lewisburg, and the unnamed defendants, who were employees at the facility, are not residents of the District of Columbia. Moreover, there is no reason to believe that either defendant Reno or Ashcroft are residents of Pennsylvania, so under no circumstances can § 1391(b)(1) provide the basis for determining the proper venue for the litigation of this case. Thus, 28 U.S.C. § 1391(b)(2) controls where venue lies in this case. And, under no scenario can it be said that "a substantial part of the events giving rise to the claim occurred" in the District of Columbia. § 1391(b)(2). Rather, the substantial part (in fact all) of the events giving rise to the claims occurred in Lewisburg, Pennsylvania, the site of Mr. Frank Joyner's alleged murder. Joyner I, 267 F. Supp. 2d at 20; Amend. Comp. ¶¶15-16. The claims now being made in this case arise out of allegations that the defendants failed to properly protect the decedent from physical and emotional abuse, and eventually, his death. Amend. Compl. ¶ 20. When these alleged events occurred, the decedent was an inmate in USP Lewisburg, located in the Middle District of Pennsylvania. Id. ¶ 15. Accordingly, the allegedly deficient supervision took place there as well. The defendants who had direct control over the decedent's custody, and therefore

---

[10](...continued)

district or division where it could have been brought ); Manley v. Engram, 755 F.2d 1463, 1467 (11th Cir. 1985) (holding that "[a] transfer under § 1406(a) is not based on the inconvenience of the transferor forum but on the impropriety of that forum"). Additionally, the Pennsylvania Court never purported to address the venue question, Joyner II, 2005 WL 3088371, at *3-*5, so the law of the case doctrine is not implicated.

direct responsibility for his safety, were employed at USP Lewisburg, and that employment forms the underlying basis for the claims against them.  Id. ¶¶ 7-8.  On the other hand, those defendants who might qualify as District of Columbia residents for the purposes of this litigation (Reno and Ashcroft) are being sued solely for the purported wrongful actions of their subordinates allegedly committed at USP Lewsburg.  Id. ¶¶ 5-6.  Thus, the putative District of Columbia residents' purportedly responsibility for the decedent's death and other injuries is minimal, at best; whereas, ground zero of the events giving rise to the plaintiff's Bivens claims that have been filed in this case took place in the Middle District of Pennsylvania.  Venue is therefore only proper there.[11]

## IV. Conclusion

The one matter on which this Judge can agree with his Pennsylvania colleague is that he has taken the "unorthodox step" of engaging in "judicial 'ping-pong.'"  Joyner II, 2005 WL 3088371, at *4.  And it is unfortunate that he did not give greater thought to that decision before making the first volley.  Having therefore placed this case in this unfortunate posture, this Court must now return the volley and transfer this case back to the Middle District of Pennsylvania, for no reasons other than because the case was transferred back to this Court without proper legal authority and the case properly belongs there.  Moreover, considering that this Court cannot exercise personal jurisdiction over those defendants who had direct responsibility for protecting the decedent from the harm that provides the basis for the filing of this action (whereas the Pennsylvania Court can), and venue cannot lie in this district, the only recourse for this Court is to decline to address the defendants' dismissal motion and leave this matter for the Middle

---

[11] Even if venue were proper here, transfer back to the Middle District of Pennsylvania would still be appropriate in the interest of justice and for the convenience of the parties pursuant to 28 U.S.C. § 1404(a).  Joyner I, 267 F. Supp. 2d at 20-21.

District of Pennsylvania to decide.

       **SO ORDERED** this 7th day of December, 2006.[12]


_____
Reggie B. Walton
United States District Judge

---

[12] An Order consistent with this Court's ruling accompanies this Memorandum Opinion.